UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SANDI ANDERSEN d/b/a DHARMA NUTRITION, LLC d/b/a DHARMA HEALING CENTER,<br>    Plaintiff,<br><br>v.<br><br>VAGARO, INC.,<br>    Defendant. | C.A. No. 1:21-CV-00282-MSM-LDA |

## ORDER

Mary S. McElroy, United States District Judge.

This matter comes before the Court on the Motion to Dismiss filed by the defendant, Vagaro, Inc. ("Vagaro"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court GRANTS without prejudice the defendant's Motion to Dismiss (ECF No. 8).

### I. BACKGROUND

The plaintiff, Sandi Andersen d/b/a Dharma Nutrition, LLC d/b/a Dharma Healing Center (together "Dharma") has filed a lawsuit against Vagaro alleging breach of contract, breach of implied warranty, and breach of the duty of good faith and fair dealing. (ECF No. 1.)

The following facts are derived from the Complaint. From 2009 until July 2019, Dharma owned and operated a "holistic healing center" in Providence, Rhode

1

Island, which offered massage therapy, reiki, and yoga to its customers. *Id.* at ¶¶ 1, 8, 9, 31. In December 2018, Dharma and Vagaro entered a contract related to Vagaro's "client management software platform." *Id.* at ¶ 11. As a member of Vagaro, Dharma received services for client contact, billing, monthly membership payments, payroll, and point of sale. *Id.* Vagaro also provided online support to Dharma and facilitated the transfer of Dharma's business data from its previous business management services provider. *Id.* ¶¶ 12-13. This data import proved problematic. Although Dharma provided Vagaro with a list of services *to be* included and a list of clients *not to be* included, certain clients and services were incorrectly added to Dharma's account on the Vagaro platform. *Id.* ¶¶ 13-15.

Following the data transfer, Dharma experienced double-booking by and double-charging of its clients. *Id.* ¶ 17. According to the Complaint, Dharma was "forced to give away free services" and suffered "clients cancelling because of faults within the Vagaro software." *Id.* at 18. Dharma contacted Vagaro repeatedly to resolve these issues, but the support communications proved ineffective. *Id.* ¶¶ 19-24. In March 2019, Dharma used Vagaro's chat support on three different occasions to report booking problems. *Id.* ¶¶ 22-24. Vagaro representatives tasked with responding to Dharma's queries explained that booking sessions with the wrong practitioners or booking sessions that were unavailable through the Vagaro platform "was not possible" and that the Vagaro "development team . . . [was] not able to determine how this customer was able to book that appointment in that time slot." *Id.* ¶¶ 22, 24. In April 2019, Dharma sought assistance from Vagaro to set up

automatic income tax deductions for employees. *Id.* ¶ 26. According to Dharma, the Vagaro representative "recommended . . . actions that are illegal under Rhode Island State Law" and "did not offer any alternative solution." *Id.* In addition to these booking and payroll problems, Vagaro's software "cancelled hundreds of monthly Dharma memberships which should never have been deleted." *Id.* ¶ 30.

At the beginning of July 2019, two Dharma employees resigned after complaining of problems associated with the Vagaro software and support. *Id.* ¶¶ 27-28. Additionally, the Complaint asserts a "documented loss of over 8,000 clients as a direct result of the breaches by Vagaro Inc." *Id.* ¶ 32. By the end of July, Dharma closed its doors permanently. *Id.* ¶ 31. Citing "[t]he financial impact of the loss of the monthly memberships" and Vagaro's "badwill," Dharma alleges that "the failed Vagaro system resulted in the inability of Andersen to maintain the business." *Id.*

Dharma initiated the instant lawsuit against Vagaro for breach of contract, breach of implied warranty, and breach of the duty of good faith and fair dealing and demands $7,186,785.00 in damages. *Id.* at 5.

Vagaro has moved to dismiss all counts in Dharma's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) In support of its Motion, Vagaro submitted a document entitled "Vagaro Customer Participation Agreement" ("Vagaro Agreement"), which it claims governs the relationship between the parties. (ECF No. 10 at 9-16.)

Vagaro argues that (1) the contract between the parties included a forum

selection clause requiring disputes between Dharma and Vagaro to be adjudicated in California state court; and (2) Dharma's Complaint fails to sufficiently establish the amount in controversy required for diversity jurisdiction. *Id.* at 4, 6. First, Vagaro urges the Court to consider the Vagaro Agreement as part of the pleadings. *Id.* at 2. Among its terms are a dispute resolution provision, a forum selection clause, a choice of law provision, and a general release. *Id.* at 2-4. Vagaro claims that these terms, and in particular the forum selection clause providing for a California forum, are a barrier to Dharma's lawsuit against it here.[1]

Second, Vagaro challenges Dharma's Complaint for failing to allege facts that establish the plaintiff has sustained damages greater than $75,000 as required under 28 U.S.C. § 1332. *Id.* at 6. Vagaro contends that, given the cost of the software, plaintiff's damages are "unlikely to exceed a few thousand dollars." *Id.* Vagaro argues that Dharma's Complaint makes an unsupported claim of damages and suggests that because Dharma's damages are not obvious, they require some factual

---

[1] The Court acknowledges the defendant's request to consider the Vagaro Agreement as part of the pleadings but declines to do so. In the first place, the Motion to Dismiss may be resolved on other grounds and the Court need not address the defendant's argument for dismissal under Rule 12(b)(6). In the second place, "[w]hen . . . a complaint's factual allegations are expressly linked to–and admittedly dependent upon–a document (*the authenticity of which is not challenged)* that document effectively merges into the pleadings . . . ." *Trans-Spec Truck Serv. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)) (internal quotation marks omitted) (first alteration in original) (emphasis added). Here, the plaintiff disputes, *inter alia*, the authenticity of the Vagaro Agreement and highlights the absence of a date or any documentation indicating that Dharma accepted the terms of the proffered contract. (ECF No. 11 at 4.) With the Vagaro Agreement's authenticity in dispute as it relates to these parties, the Court concludes that the agreement cannot properly be merged with the pleadings.

support.  *Id.*  Dharma claims more than $7,000,000 dollars in damages, but according to Vagaro, such damages are not "reasonably foreseeable for an alleged breach of contract related to the sale of software."  *Id.*  Finally, the defendant directs the Court once again to the language of the Vagaro Agreement, which releases it from liability for unforeseeable damages.  *Id.* at 7.  Vagaro argues that the damages asserted in the Complaint are not reasonably foreseeable costs of the "alleged problems with Defendant's software." *Id.* at 7.[2]

Dharma opposes dismissal. (ECF No. 11.)  First, as noted above, it challenges the validity of the Vagaro Agreement.  *Id.* at 3-4.  Because the Court has determined that this Motion may be resolved on other jurisdictional grounds, it need not delve into the plaintiff's arguments on this issue any further.  Second, Dharma avers that it "has pled sufficient facts that the Defendant's breach of contract resulted in significant damages to the Plaintiff, including the loss of profits."  *Id.* at 5.  Vagaro strikes back, calling the damages allegation conclusory and speculative.  (ECF No. 12 at 2.)

The Court must determine whether, at this preliminary stage, the plaintiff has met its burden of establishing the jurisdictional amount in controversy.

## II. MOTION TO DISMISS STANDARD

As a preliminary matter, "[t]he party invoking jurisdiction bears the burden of establishing the jurisdictional requirements."  *Ins. Brokers West, Inc. v. Liquid*

---

[2] Vagaro also seeks an award of attorneys' fees, based Section 8.3 of the Vagaro Agreement.  Because the Agreement does not merge with the pleadings as explained *supra*, the Court declines to entertain an award of attorneys' fees based thereon.

5

*Outcome, LLC*, 241 F. Supp. 3d 339, 342 (D.R.I. 2017) (citing *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 116 (1st Cir. 2016)). Jurisdiction based on diversity of citizenship between the parties requires the amount in controversy to "exceed the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332. "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *Merlonghi v. U.S.*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

## III. DISCUSSION

The defendant's Motion seeks dismissal on two separate grounds. The Court need only address one. Dharma's Complaint claims that it has suffered $7,186,785.00 in damages because of Vagaro's alleged breach of contract. Ordinarily, the amount of damages asserted by the party invoking diversity jurisdiction "'will control the amount in controversy for jurisdictional purposes' as long as the claim is made 'in good faith.'" *Ins. Brokers West*, 241 F. Supp. 3d at 343 (quoting *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995)). Good faith is demonstrated when a party shows "that to anyone familiar with the applicable law this claim could objectively have been viewed as worth more than the jurisdictional minimum." *Id.* (quoting *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 43 (1st Cir. 2012)) (internal quotation marks omitted).

If an opposing party raises a challenge to the amount in controversy, however, "then the proponent must allege with sufficient particularity facts that in some way

6

support the minimum jurisdictional amount." *Id.* (quoting *Abdel-Aleem*, 665 F.3d at 42) (internal quotation marks omitted). The party challenging jurisdiction will prevail "if, on the face of the complaint, it appears to a legal certainty that the required amount in controversy cannot be met." *Id.* (citing *CE Design Ltd. v. Am. Econ. Ins. Co.*, 755 F.3d 39, 43 (1st Cir. 2014)).

Here, Vagaro raises such a challenge to Dharma's damages claim. In response, Dharma offers only that "[t]he plaintiff has pled sufficient facts that the Defendant's breach of contract resulted in significant damages to the Plaintiff, including the loss of profits." (ECF No. 11 at 5.) Vagaro "has questioned the amount" in controversy and "the burden has shifted to [Dharma] to allege 'with sufficient particularity' facts that in some way support the contention that there is more than $75,000 at stake." *Abdel-Aleem*, 665 F.3d at 42 (quoting *Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991)). Dharma, however, has presented no further support for its damages claim, and so the Court considers the face of Dharma's Complaint to assess whether the amount in controversy has or has not been met.

Dharma claims that the parties entered into a contract in December 2018 but offers no facts as to the consideration paid or allegations as to the value of the contract. Similarly, while Dharma's Complaint alleges loss of client memberships and lost profits, as well as the ultimate closure of the business, it offers no allegations of financial losses associated with these claims. It does allege the loss of 8,000 clients but attaches no specific financial number either to each client or to the aggregate of 8,000. Similarly, although it alleges it had to close its doors as a result of the

software's poor functionality, it does not allege the financial worth of the operations that were foreclosed. Instead, at the end of Dharma's Complaint, it simply claims $7,186,785.00 in damages. As the First Circuit has explained, when the amount in controversy is challenged "we expect something more than bald statements and round numbers." *Id.* at 43. In *Abdel-Aleem*, the plaintiff amended the previously inadequate complaint to include an amount in controversy of "at least $1,000,000." *Id.* The First Circuit concluded, however, that the plaintiff had "not provided any facts or substantiation to show with sufficient particularity that his case is worth more than $75,000, let alone the claimed $1,000,000. *Id.* (citing *Dep't of Recreation*, 942 F.2d at 90). The same is true here. Apart from the single sentence asserting more than $7,000,000 in damages, the plaintiff has made insufficient effort to substantiate its claim in the face of the defendant's Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS without prejudice the defendant's Motion to Dismiss (ECF No. 8).

IT IS SO ORDERED.

*/s/ Mary S. McElroy*
_____
Mary S. McElroy
United States District Judge
May 12, 2022